STATE OF NORTH CAROLINA v. DAVID LEE FULCHER

No. 7721SC255

(Filed 19 October 1977)

**1. Kidnapping § 1— new kidnapping statute—asportation**

> The new kidnapping statute, G.S. 14-39, supersedes the common law crime of kidnapping and removes asportation as an essential element of the crime.

**2. Kidnapping § 1— unlawful restraint or confinement—substantial duration—asportation—substantial distance**

> Under the new kidnapping statute, the unlawful restraint or confinement must be substantial in terms of duration and not merely incidental to the commission of another crime, and if asportation is charged, the asportation must be substantial in terms of distance and not merely incidental to another crime.

**3. Kidnapping § 1.2— sufficiency of evidence**

> The State's evidence was sufficient for the jury on two charges of kidnapping under G.S. 14-39 where it tended to show that defendant bound and restrained each victim for a substantial period of time and forced each victim to have oral sex with him, and that the unlawful restraint was not merely incidental to the commission of the felony of crime against nature upon each victim but was committed against each victim while defendant was committing the crime against nature upon the other.

**4. Kidnapping § 1.3— unlawful confinement—instructions—substantial duration**

> If a charge against a defendant is kidnapping by *unlawful confinement*, the trial judge in instructing the jury must define such term in substance as meaning restraint for a substantial period and not merely incidental to the commission of another crime.

**5. Kidnapping § 1.3— unlawful restraint—instructions—substantial duration**

> If a defendant is charged with kidnapping by *unlawful restraint*, the trial judge in instructing the jury must define such term in substance as meaning restraint for a substantial period and not merely incidental to the commission of another crime.

**6. Kidnapping § 1.3— removal from one place to another—substantial distance**

> If a defendant is charged with kidnapping by *removal from one place to another*, the trial judge must define the required asportation in substance as meaning a movement from one place for a substantial distance and not merely incidental to the commission of another crime.

**7. Kidnapping §§ 1, 1.3— charge of unlawful restraint in all kidnapping cases—instructions on unlawful restraint**

> Since any unlawful confinement or any unlawful removal from one place to another must necessarily involve unlawful restraint, the State in any kidnapping case may confine the charge to kidnapping by unlawful restraint; and if the defendant is charged disjunctively in the language of the statute, the trial judge may limit his definition and explanation to the term "unlawful restraint," even though the evidence tends to show confinement, asportation, or both.

**8. False Imprisonment § 1; Kidnapping § 1— false pretense—lesser offense of kidnapping**

The common law crime of false imprisonment, a general misdemeanor, has not been superseded by the new kidnapping statute because there may be an unlawful restraint without the purposes specified in the statute, and in appropriate cases the trial judge should instruct the jury on false imprisonment as a lesser offense of kidnapping.

**9. Criminal Law § 43.1— admission of "mug shots"**

In this prosecution for kidnapping and crime against nature, defendant was not prejudiced by the admission of "mug shots" of defendant for the purpose of illustrating testimony by the victims.

APPEAL by defendant from *Kivett, Judge.* Judgment entered 9 December 1976 in Superior Court, FORSYTH County. Heard in the Court of Appeals 24 August 1977.

The defendant pled not guilty to two charges of crime against nature and two charges of kidnapping.

State's evidence tended to show that Katherine Angers and Frances McCrory arrived from Canada in Winston-Salem on 8 September 1976 and that they checked into a motel. They tried for 20 or 30 minutes to telephone friends from a well-lit booth outside their room. Defendant came in and stayed around for about 15 minutes and on one occasion he made a comment to Angers. Angers testified that she looked at defendant's face three to four times. The women returned to their room. At 10:30 p.m. defendant knocked on their door and told them that they had a telephone call. Angers left the room to take the call but found the phone dead. Defendant commented that perhaps someone was playing a trick on her. Defendant knocked at the women's door again at 11:00 p.m. to tell them they had a call. Again, Angers found the phone dead. As she started back to the room defendant pulled a knife and forced her to let him in. The defendant told the girls that he had a knife and could kill them, but that all he wanted was their car. After several moments defendant forced the women to lie down on a bed and bound their wrists behind their backs with tape. He put gags over their mouths. Later, he forced them to have oral sex with him. The women were able to loosen their hands and defendant ran away. The women called for help. Angers still had several pieces of tape on her wrists for the police to see.

The motel manager testified as to a registration card produced by the State such as was customarily filled out when a person checked into the motel. The card showed that a David L. Fulcher leased a motel room on 8 September 1976.

Detective Worsham testified that he investigated the alleged crimes, arriving at the motel around midnight, and that the women told him substantially what they later testified to in court, that they described the defendant in some detail and later picked out his photograph from five presented to them. Police Sergeant Benbow further corroborated the witnesses' description of defendant. Defendant's brother-in-law testified as to the discovery of the roll of tape which he found in defendant's car on the day following the alleged crimes.

Defendant's evidence tended to show that defendant was at a truck stop in Lexington, 25 miles from the motel at the time of the alleged crimes. He offered the testimony of three witnesses.

After defendant rested, the State was allowed, over objection, to reopen its case. Angers testified that she had noticed a wart on defendant's penis, the existence of which was substantiated by medical examination of defendant.

The jury found defendant guilty on all counts. He received sentence of two 10-year consecutive sentences on the crime against nature charges, to run concurrently with 28- to 40-year sentence on the consolidated kidnapping charges. From this judgment imposing sentence, defendant appeals.

*Attorney General Edmisten by Associate Counsel Henry H. Burgwyn for the State.*

*Harper and Wood by J. Randolph Cresenzo for defendant appellant.*

CLARK, Judge.

The defendant challenges the constitutionality of the new kidnapping statute, a rewriting of G.S. 14-39, effective 1 July 1975, contending that subsection (a)(2) of the statute subjects him to conviction for two crimes where only one was committed, a violation of the due process and equal protection clause of the Federal Constitution.

The new statute reads in pertinent part:

"Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kid-

napping if such confinement, restraint or removal is for the purpose of:

\* \* \* \*

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; . . ." G.S. 14-39(a)(2).

The old statute (G.S. 14-39) merely provided that kidnapping was unlawful and did not define the crime. The failure of the old statute to define kidnapping did not render the statute vague or uncertain since the common-law definition of the offense was incorporated into the statute by construction. *State v. Lowry*, 263 N.C. 536, 139 S.E. 2d 870 (1965); 22 C.J.S., Criminal Law, § 21.

Kidnapping was defined by common law as the unlawful taking and carrying away of a person by force or fraud and against his will. 8 Strong, N.C. Index 3d, Kidnapping, § 1. Bishop's definition of kidnapping as "false imprisonment aggravated by conveying the imprisoned person to some other place," was quoted with approval in *State v. Harrison*, 145 N.C. 408, 59 S.E. 867 (1907), the first kidnapping conviction to be reviewed by the North Carolina Supreme Court. North Carolina does not have a statute making false imprisonment a crime, but it was a crime at common law, and the common law was adopted as the law of this State (G.S. 4-1). False imprisonment is a general misdemeanor at common law. *State v. Ingland*, 278 N.C. 42, 178 S.E. 2d 577 (1971).

Though asportation was an essential element of kidnapping the case law offered no definition of the element. In *State v. Ingland, supra*, the court observed that "*any* carrying away is sufficient." However, there was a departure from this view in two cases, which treated the subject of asportation and offered some guidelines for determining it: (1) *State v. Dix*, 282 N.C. 490, 193 S.E. 2d 897 (1973), and (2) *State v. Roberts*, 286 N.C. 265, 210 S.E. 2d 396 (1974). It is possible that the two decisions had some influence on the enactment of the new statute which defined kidnapping and eliminated asportation as a necessary element of the crime.

*Dix* reversed the kidnapping conviction of the defendant on the ground of insufficient asportation. The defendant, with gun pointed, marched the jailer 62 feet, down the jail vestibule, through the office, into a hall, and compelled him to open a cell-block door. The jailer was then locked in the cell. Justice Sharp (now Chief Justice) for the Court wrote that common-law kidnapping had never been

based on a "mere technical asportation," but that it was rather based on the issue of increased risk to the victim. 282 N.C. at 501, 193 S.E. 2d at 904. She found that the victim jailer although technically asported 62 feet and locked in a cell, was exposed to no more risk by this asportation and detention than was inherent in the escape itself. The jailer's asportation had been "incidental to defendant's assault upon the jailor and to the rescue or jail delivery which he accomplished." 282 N.C. at 502, 193 S.E. 2d at 904. The court, however, gave no other definition to help distinguish degrees of asportation, to separate incidental from "primary" taking and carrying away.

*Roberts* reversed the kidnapping conviction of a man who grabbed a seven-year-old child from a playground and dragged her through the yard to a patio door leading to a nursery building, a distance of approximately 80 to 90 feet in all. The court found that there was insufficient evidence to show either real asportation or true unlawful restraint. Chief Justice Bobbitt redefined such unlawful restraint, which he called false imprisonment, to demand what has been called "substantiality" of restraint. He also added some qualification of asportation:

"... To constitute the crime of kidnapping the defendant (1) must have falsely imprisoned his victim by acquiring complete dominion and control over him *for some appreciable period of time*, and (2) must have carried him *beyond the immediate vicinity of the place of such false imprisonment....*" [Emphasis added.] 286 N.C. at 277, 210 S.E. 2d at 404.

Since the child was "rescued immediately, unharmed, the offense under consideration cannot be considered the sort of conduct for which life imprisonment is permissible and for which a sentence of sixty years was actually imposed." 286 N.C. at 278, 210 S.E. 2d at 405. This observation seems to be in line with Justice Sharp's demand that the asportation be primary, not just incidental, and we do not construe it to require actual harm incurred as a criterion for determining whether kidnapping had taken place rather than to the mere risk of harm to which the victim was exposed.

Justice Huskins wrote vigorous dissents to both *Dix* and *Roberts*. He emphasized that the quantitative measurement added by the court to the asportation requirement was a burden almost impossible to comprehend let alone meet. He did not address the underlying consideration of risk exposure. Speaking of *Roberts*, he wrote, "The majority decision is the first offspring of *Dix*. There

will be others; and the law of kidnapping will become, if in fact it has not already, a jumble which officers and prosecutors can neither understand nor enforce. Meter sticks and measuring tapes are strange but necessary aids in determining whether a kidnapping has been committed. Perhaps divining rods are next." 286 N.C. at 282, 210 S.E. 2d at 407.

[1] The new statute (G.S. 14-39) supersedes the common law crime of kidnapping. It removes asportation as an essential element of the crime. A person is guilty of kidnapping if he unlawfully confines or restrains, or removes from one place to another for the purposes set out in the statute. 12 Wake Forest Law Review 434, 439. It seems that any unlawful asportation involves unlawful restraint. Too, it seems that any unlawful confinement must involve unlawful restraint. Therefore, if a case were to involve asportation or confinement, it would not be necessary to charge on either. A charge on unlawful restraint would be sufficient.

Though the new statute is broader than common-law kidnapping in that it eliminates asportation as a necessary element of the crime, it is restrictive in that, by limiting kidnapping to unlawful confinement, restraint or asportation for the purposes enumerated it does not include some of the situations covered by the common-law crime. In *Roberts, supra,* if we assume that there was unlawful restraint or asportation within the meaning of the statute, it is questionable that State's evidence was sufficient to show that the defendant's purpose was one of those enumerated in the statute. In the recent case of *State v. Hoots,* 33 N.C. App. 258, 234 S.E. 2d 764 (1977), defendants' kidnapping convictions were reversed. Although they had aided others in tying two victims to a tree out in the country after the victims had been "hogtied" and loaded into another's car, State's evidence tended to show no other purpose than solicitation of information about stolen marijuana. Such purpose was not one of those enumerated in the statute. Regardless of the danger to which such victims are exposed, unless the purpose of the exposure is either felonious, or otherwise enumerated, not merely unlawful, the statutory crime of kidnapping has not been committed.

On the other hand, it is difficult to imagine a felony against the person that does not involve unlawful restraint of some sort. And it is clear that if the new statute is literally construed, a person could be convicted of the felony against the person and also of kidnapping, though the restraint was minimal and incidental to the commission of the other crime. This strict statutory construction could, and in some states has, resulted in prosecutions for kidnapping for the sole

purpose of securing the more severe statutory punishment for crimes not subject to such severe penalties. See *State v. Dix*, 282 N.C. at 498, 193 S.E. 2d at 904. California repudiated this strict construction in *People v. Daniels*, 80 Cal. Rptr. 897, 459 P. 2d 225 (1969), and held that asportation necessitated substantial increased risk of harm. New York, under an old statute which, like our new statute, did not necessitate asportation, refused to uphold a conviction of kidnapping where it held that the asportation of a couple in their own car was *incidental* to the commission of armed robbery. *People v. Levy*, 15 N.Y. 2d 159, 204 N.E. 2d 842 (1965). Subsequently, the New York legislature adopted this judicial interpretation by amending its kidnapping statute to require asportation, called "abduction," and to define asportation in terms of substantiality. N.Y. Penal Code § 135.20 *et seq.*, (MacKinney, 1975). Unlawful restraint constitutes the crime of "unlawful imprisonment." § 135.05 *et seq.*

Thus, it is obvious that a literal interpretation of the new kidnapping statute would create two crimes instead of one, with resulting unfairness and the potential for abusive prosecutions. And this in turn would call into question the constitutionality of the statute under the due process clause. The prosecutorial application of the same could violate the equal protection clause of the Federal Constitution. These problems can be avoided only by a broader judicial construction of the statute which provides basic guidelines for prosecutions thereunder by highlighting the difference between incidental and primary kidnapping by dealing directly with the qualitative risk to which the victim is exposed.

The Court of Appeals in *State v. Bryant*, 20 N.C. App. 223, 201 S.E. 2d 211 (1973), and the Supreme Court on appeal of the same case, 285 N.C. 27, 203 S.E. 2d 27 (1974), upon remand by the United States Supreme Court, 413 U.S. 913, 93 S.Ct. 3065, 37 L.Ed. 2d 1036 (1973), for reconsideration in light of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 2d 419 (1973), by judicial construction, limited the application of an obscenity statute (G.S. 14-190.1), establishing in this State the principle of law that where a question of constitutionality is raised, a construction of the statute is fairly possible by which the question may be avoided. *See In re Dairy Farms*, 289 N.C. 456, 223 S.E. 2d 323 (1976).

In approaching the problem of judicial construction of the new statute, we find some guidance from our Supreme Court in its construction of the old kidnapping statute in the *Dix* and *Roberts* cases. We trust that our understanding of these guidelines is such that we

may construe the new statute so as to maintain judicial consistency without doing violence to the legislative intent to change the elements of common-law kidnapping.

We have also available for guidance the Model Penal Code's kidnapping statute which is similar to ours except that it does define both asportation and unlawful restraint. It reads in pertinent part:

"A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a *substantial distance from the vicinity* . . . or he unlawfully confines another *for a substantial period in a place of isolation*, . . ." [Emphasis added.] Model Penal Code, § 212.1, Tent. Draft (1962).

The Model Penal Code clearly intends to exclude from kidnapping "trivial changes of location having no bearing on the evil at hand" and to eliminate "the absurdity of prosecuting for kidnapping in cases where the victim is forced into his own home to open the safe, or to the back of his store in the course of a robbery." Model Penal Code, § 212.1, Comment 16, Draft #11 (1960). Its definition aids a bit in refining asportation and carries the definition of unlawful restraint beyond Justice Bobbitt's demand for substantial duration. The Model Penal Code's unlawful confinement must take place in a "place of isolation" and clearly speaks to the special risk to which the kidnapping victim is exposed.

[2] We conclude that a fitting judicial definition must demand consideration of whether the unlawful restraint or confinement was substantial in terms of duration and not merely incidental to the commission of another crime. The asportation element similarly requires a consideration of substantiality in terms of distance and again not merely incidental to another crime. The risk of harm analysis in the *Dix* case does not appear to be necessary as a separate guideline since substantial confinement, restraint or asportation not merely incidental to the commission of another crime would seem necessarily to involve some increased risk of mental or physical harm.

[3] In the case before us the evidence for the State tended to show that the defendant bound and restrained each victim for a substantial period of time, and that the unlawful restraint was not merely incidental to the commission of the felony of crime against nature upon each victim, but was gratuitously committed against one victim while he was committing the crime upon the other. Under these

circumstances, the evidence was sufficient to demonstrate kidnapping as we have defined it, sufficient to go to the jury. The defendant's motion for nonsuit was properly denied.

In *sub judice*, no exceptions having been made to the instruction of the court, the charge was not included in the record on appeal. However, we believe that our judicial definition of statutory kidnapping is best explicated by a consideration of proper jury instructions. We note that North Carolina Pattern Instructions on Kidnapping (Crim. 210.10, revised January 1976), lists six things that the State must prove beyond a reasonable doubt. The first two are as follows:

"First, that the defendant (confined) (restrained) (removed from one place to another) (*name victim*).

Second, that the defendant did this unlawfully. . . ."

It is clear that these instructions which merely list but do not define and explain the elements to the jury are not sufficient.

In instructing the jury, the second element need not be separated from the first, and the appropriate element or elements used as the basis for the prosecution (unlawfully confined, unlawfully restrained, and unlawfully removed from one place to another) should be defined and explained to the jury. By way of summary and clarification we conclude the following:

[4]  1. If the charge against the defendant is kidnapping by *unlawful confinement*, the trial judge in instructing the jury must define the term in substance as meaning confinement for a substantial period and not merely incidental to the commission of another crime.

[5]  2. If the charge against the defendant is kidnapping by *unlawful restraint*, the trial judge in instructing the jury must define the term in substance as meaning restraint for a substantial period and not merely incidental to the commission of another crime.

[6]  3. If the charge against the defendant is kidnapping by *moving from one place to another*, the trial judge in instructing the jury must define the term in substance as meaning movement from one place for a substantial distance and not merely incidental to the commission of another crime.

[7]  4. Since "confinement" and "restraint" are practically synonymous, and there must be restraint if there is confinement,

and since unlawful removal from one place to another must involve unlawful restraint, in any kidnapping case the State may confine the charge against the defendant to kidnapping by unlawful restraint. And if the defendant is charged disjunctively in the language of the statute the trial judge could limit his definition and explanation to the term "unlawful restraint," even though the evidence also tended to show confinement or asportation, or both. The trial judge should instruct the jury in substance that the State must prove beyond a reasonable doubt that defendant unlawfully restrained the victim, that the term "unlawfully restrained" means that the restraint was for a substantial period of time and was not merely incidental to the commission of the other crime. It would, of course, be appropriate for the trial judge to apply the law to the evidence in the final mandate by describing the circumstances of the restraint as the evidence tends to show.

[8]  5. The common-law crime of false imprisonment, a general misdemeanor, has not been superseded by the new kidnapping statute because there may be an unlawful restraint without the purposes specified in the statute. In appropriate cases the trial judge should instruct the jury on false imprisonment as a lesser offense of kidnapping.

[9]  Defendant also objected to the in-court identification, to the admission into evidence of a roll of tape allegedly used to bind the victims, and to the admission of "mug shots." There was a *voir dire* hearing on each of these evidentiary issues. In North Carolina admission of such mug shots has been held unprejudicial. *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970). We find that the evidence fully supports the trial court's finding of facts and conclusions. These assignments of error are overruled.

There is no merit to defendant's other assignments of error.

Affirmed.

Judges VAUGHN and HEDRICK concur.