STATE OF NORTH CAROLINA v. MICHAEL J. RAYNOR, DEFENDANT

No. COA97-98

(Filed 6 January 1998)

1. **Kidnapping and Felonious Restraint § 28 (NCI4th)— indictment alleging restraint—instruction on restraint or confinement—no error**

   There was no error in the trial court's instruction that defendant could be found guilty of first-degree kidnapping based upon "restraint or removal" when the indictment alleged only a theory of kidnapping based upon restraint of the victim since unlawful removal from one place to another must involve unlawful restraint, and the evidence at trial supported conviction under both the removal and restraint theories.

**2. Kidnapping and Felonious Restraint § 18 (NCI4th)— element of restraint—removal not inherent in robbery**

There was sufficient evidence of the element of restraint for submission of a charge of kidnapping to the jury in that the evidence showed more than a mere technical asportation inherent in the commission of an armed robbery where defendant and his accomplice first moved the victim to a bedroom to take money in his wallet and then moved him to the kitchen where they attempted to tie him up.

**3. Kidnapping and Felonious Restraint § 14 (NCI4th)— perpetrators fleeing scene—no release in safe place**

A kidnapping victim was not released in a safe place so that the charge was raised to first-degree kidnapping where defendant and his accomplice fled the scene when they were overpowered by the victim as they attempted to tie him up with electrical cords.

**4. Larceny § 220 (NCI4th)— possession of stolen property—knowledge property was stolen**

There was sufficient evidence that defendant knew or had reasonable grounds to believe that a gun in his possession was stolen so as to support submission of a charge of felonious possession of stolen property to the jury where defendant's accomplice testified defendant told him that the gun was stolen, and the owner testified that the gun had been stolen from his home.

Appeal by defendant from judgments entered 30 August 1996 by Judge James E. Ragan, III. Heard in the Court of Appeals 19 November 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General John J. Aldridge, III, for the State.*

*Joseph E. Stroud, Jr. for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Michael J. Raynor was indicted for robbery with a dangerous weapon, first degree kidnapping, felonious possession of stolen goods, and possession of a firearm by a felon on 28 May 1996. This matter came on for hearing before Judge James E. Ragan, III and a duly empaneled jury during the 26 August 1996 criminal session of Onslow County Superior Court.

STATE v. RAYNOR

[128 N.C. App. 244 (1998)]

The State's evidence tended to show that on 20 January 1996, when Frank Mordica, Jr. responded to a ringing doorbell at his residence in Jacksonville, North Carolina, two men shoved a 9 millimeter handgun into Mordica's face and ordered him back into the house. The two men followed Mordica into the house, and demanded money. Mordica told the men that his wallet was in the bedroom, and in response, the men put the gun to the back of Mordica's head and held onto his pants as they moved Mordica to his bedroom to get the wallet. Once in the bedroom, Mordica took all of the cash from his wallet (approximately $50.00), and gave it to the men. The men, then, instructed Mordica to sit on the bed. The shorter of the two men held the gun on Mordica, while the taller of the two men proceeded to tear cords from the electrical equipment. Next, the men escorted Mordica at gunpoint into the kitchen area of the residence, with the taller man holding the gun. After reaching the kitchen, the men took Mordica's car keys. The taller man, again gave the gun to the shorter man, and attempted to tie Mordica to a kitchen chair. Mordica, however, fought and was able to overcome the shorter man, who held the gun, and took the weapon from him. During the struggle, the taller man jumped on Mordica's back, but Mordica was able to push him off. One round was discharged from the gun during the scuffle, but did not hit anyone.

The two men were able to extricate themselves from the fray and fled the residence. Thereafter, Mordica called the Jacksonville Police Department and reported the incident. When the police arrived, Mordica gave the officers a description of the robbers. They both had worn black jackets and bandanas. The taller of the two men wore a yellow bandanna, while the shorter man wore a blue bandana over his face. The taller man had a light complexion and a scraggly beard. Mordica subsequently remembered that the shorter man had come to his home, on a previous occasion, with a mutual friend. Mordica remembered that this person had been introduced to him as Devon Jones.

Reginald Waters testified that about one or two weeks before 20 January 1996, his 9 millimeter handgun had been stolen from his Jacksonville residence. He identified the gun which Mordica had taken from his assailants as the gun stolen from his home.

Devon Jones testified that he was one of the assailants who entered Mordica's home on 20 January 1996. Jones further testified that he and defendant decided to rob someone after deciding to go to

a party, but discovering that neither of them had any money. The two ultimately decided to go to Mordica's house and rob him. Jones had seen the gun used to rob Mordica in the glove compartment of defendant's car, and later made a statement to the police that defendant had told him that the gun was stolen from the Laurindale area of Jacksonville.

The jury found defendant guilty of robbery with a dangerous weapon, first degree kidnapping, felonious possession of stolen goods, and possession of a firearm by a felon. As a result, Judge Ragan sentenced defendant to a minimum of 77 months and a maximum of 102 months imprisonment for robbery with a dangerous weapon, a minimum of 100 months and a maximum of 129 months imprisonment for first degree kidnapping, a minimum of 8 months and a maximum of 12 months imprisonment for possession of a stolen firearm and a minimum of 15 months and a maximum of 23 months imprisonment for the offense of possession of a firearm by a felon. Defendant appeals.

Defendant presents four arguments on appeal, challenging the trial court's submission of and the instruction on the charge of kidnapping, the submission of the charge of felonious possession of stolen property, and the admission of certain State's evidence and exclusion of his proffered evidence. For the reasons discussed herein, we hold that defendant received a fair trial, free from prejudicial error.

**[1]** Defendant first argues that the trial court committed plain error in instructing the jury on a theory of kidnapping not alleged in the bill of indictment. We cannot agree.

If at trial, a defendant fails to object to a jury instruction, that instruction is reviewable on a plain error standard on appeal. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). The plain error standard requires a defendant to make a showing that absent the erroneous instruction, a jury would not have found him guilty of the offense charged. *Id.*

In the instant case, defendant was indicted for the charge of first degree kidnapping in case number 96CRS3600. This indictment alleged that defendant "unlawfully, willfully and feloniously did kidnap Frank Mordica, Jr., . . . by unlawfully restraining him without his consent and for the purpose of facilitating the commission of a felony: robbery with a dangerous weapon." However, the trial court instructed the jury as follows:

STATE v. RAYNOR

[128 N.C. App. 244 (1998)]

> Now, I charge that for you to find the defendant guilty of first degree kidnapping, the state must prove five things beyond a reasonable doubt: First, that the defendant unlawfully restrained a person, that is, restricted his freedom of movement, or removed a person from one place to another; second, that the person did not consent to this restraint or removal; third, that the defendant restrained or removed that person for the purpose of facilitating his commission of robbery with a firearm; fourth, that this restraint or removal was a separate, complete act, independent of and apart from the robbery with a dangerous weapon; and fifth, that the person was not released by the defendant in a safe place.

Defendant contends that this instruction was plain error in that it allowed the jury to convict him on a theory not stated in the indictment. In support this argument, defendant cites *State v. Tucker*, 317 N.C. 532, 346 S.E.2d 417 (1986).

In *Tucker*, the North Carolina Supreme Court held that the trial court erred in instructing the jury on a theory of kidnapping not charged in the indictment. The indictment in *Tucker* alleged that the defendant "unlawfully, willfully, and feloniously did kidnap [the victim], . . . by unlawfully *removing her from one place to another*, without her consent, and for the purpose of facilitating the commission of the felonies of First Degree Rape and First Degree Sexual Offense." *Id.* at 537, 346 S.E.2d at 420. The trial court instructed the jury that they could find the defendant guilty of first degree kidnapping if they found, in pertinent part, " 'that the defendant unlawfully *restrained* [the victim], that is, restricted [her] freedom of movement by force and threat of force.' " *Id.* (alterations in original). As the indictment in *Tucker* only allowed for a conviction on the theory of kidnapping by removing the victim from one place to another, while the charge to the jury permitted conviction on an entirely different theory not mentioned in the indictment—restraint, our Supreme Court found that the trial court had committed plain error. Such is not the case in the instant action.

In the case *sub judice*, defendant's indictment alleged a theory of kidnapping based upon restraint of the victim. The jury instructions given by the trial court permitted conviction on the theory of kidnapping by restraint or removal. *Tucker* is, therefore, not controlling in the present case.

Our Supreme Court has established that a disjunctive instruction which allows the jury to find a defendant guilty if he commits either

of two underlying acts, either of which is in itself a separate offense, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986). If, alternatively, the trial court instructs the jury disjunctively as to various alternative acts which will establish an element of the offense, the requirement of unanimity is satisfied. *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990); *State v. Johnston*, 123 N.C. App. 292, 473 S.E.2d 25 (1996), *disc. review denied*, 344 N.C. 737, 478 S.E.2d 10 (1996). In *State v. Fulcher*, our Supreme Court stated, "unlawful removal from one place to another must involve unlawful restraint, [hence,] in any kidnapping case the State may confine the charge against the defendant to kidnapping by unlawful restraint." *State v. Fulcher*, 34 N.C. App. 233, 242, 237 S.E.2d 909, 915 (1977), *aff'd*, 294 N.C. 503, 243 S.E.2d 338 (1978).

In this case, the facts tend to show that defendant and another forcibly entered the residence of Frank Mordica, Jr., shouting and pointing a gun at him, while demanding his money. The two men, then, while holding onto Mordica's pants and holding a gun to the back of his head, forced Mordica to a bedroom in the rear of the house where his wallet was located. Upon reaching the bedroom, defendant and his accomplice took all of Mordica's money. Thereafter, the two perpetrators instructed Mordica to sit on the bed, while defendant tore cords from electrical equipment and his accomplice held a gun on Mordica. The two then directed Mordica, at gun point, into the kitchen where they took Mordica's car keys. At this point, defendant attempted to tie Mordica to a kitchen chair with electrical cords. Mordica, however, fought and was able to overcome defendant's accomplice and took the gun from him. The two perpetrators then fled Mordica's home. We hold that there was no error in the trial court's instruction that defendant could be found guilty of first degree kidnapping based upon "restraint or removal," as the evidence at trial supports conviction under both the removal and restraint theories of kidnapping.

[2] Defendant next contends that the trial court erred in submitting the charge of kidnapping to the jury, and in failing to submit the charge of attempted kidnapping. First, defendant argues that there was not sufficient evidence of the element of restraint to submit the charge of kidnapping. Instead, he contends that the evidence showed only an unsuccessful attempt to restrain the victim, so as to support an instruction on attempted kidnapping. Again, we cannot agree.

Our Supreme Court has noted that restraint or removal is inherently an element of some felonies, such as armed robbery and rape, and therefore, the restraint, confinement or removal required of the crime of kidnapping, has to be something more than that restraint inherently necessary for the commission of these other felonies. *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981); *Fulcher*, 294 N.C. 503, 243 S.E.2d 338. Restraint may be accomplished by restricting one's freedom of movement by confinement, or by restricting by force, threat, fraud, without confinement. *State v. Moore*, 77 N.C. App. 553, 335 S.E.2d 535 (1985), *aff'd*, 317 N.C. 144, 343 S.E.2d 430 (1986) (per curiam). Again, this Court noted in *Fulcher*, "unlawful removal from one place to another must involve unlawful restraint." *Fulcher*, 34 N.C. App. at 242, 237 S.E.2d at 915.

The facts in this case are to be distinguished from those of *Irwin*, wherein the Supreme Court found that the victim's removal to the back of a drug store to obtain drugs was an inherent and integral part of the attempted armed robbery. *See Irwin*, 304 N.C. 93, 282 S.E.2d 439. Accordingly, under the principals of *Fulcher*, the Court found that the defendant's removal of his victim was "a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446.

Herein, the evidence tends to show that more than a "mere technical asportation" occurred (1) when defendant and his accomplice restrained and moved Mordica from the front door of his residence to a back bedroom, so that they could take the money contained in Mordica's wallet; and (2) when they then restrained and moved Mordica to the kitchen, where the two took Mordica's keys and attempted to tie up their victim. As concluded in our analysis of defendant's previous argument, there is plenary evidence that tends to show that defendant restrained his victim for the purpose of committing armed robbery. Moreover, the facts in the instant case tend to show that the restraint utilized herein was more than that inherently necessary for the commission of armed robbery.

**[3]** Defendant further contends that there is no evidence that Mordica was not released in a safe place, so as to raise the charge to first degree kidnapping. *See* N.C. Gen. Stat. § 14-39 (1993) (providing, *inter alia*, that second degree kidnapping is elevated to first degree kidnapping if the person kidnapped was not released by the defendant in a safe place). This provision of section 14-39 implies some willful action on the part of the defendant to ensure that his victim is

released in a safe place. *State v. Jerrett,* 309 N.C. 239, 262, 307 S.E.2d 339, 351 (1983).

In the case presently before us, defendant and his accomplice were overpowered by Mordica when they attempted to tie him up with electrical cords. After Mordica wrestled the gun from defendant's accomplice, the two perpetrators fled Mordica's residence. On these facts, there is no evidence of any willful action on defendant's part to release Mordica, much less ensure that Mordica was released in a place of safety.

As there was sufficient evidence to show that defendant restrained his victim for the purpose of committing armed robbery and failed to release him in a safe place, an instruction for first degree kidnapping was supported by the evidence, while an instruction for attempted kidnapping was not. Hence, this argument fails.

[4] Defendant next argues that the trial court erred in submitting the charge of felonious possession of stolen property to the jury. Defendant contends that there was no evidence that he knew or had reasonable grounds to believe the gun in his possession was stolen. We do not agree.

In order for a defendant to be convicted of the crime of possession of stolen property, the State must prove the following:

> (1) possession of personal property
>
> (2) valued at more than $400.00 (now $1,000.00)
>
> (3) which has been stolen
>
> (4) [with] the possessor knowing or having reasonable grounds to believe the property to have been stolen, and
>
> (5) the possessor acting with a dishonest purpose.

*State v. Davis,* 302 N.C. 370, 373, 275 S.E.2d 491, 493 (1981). If the stolen property is a firearm, then the value of the property is irrelevant. *State v. Taylor,* 311 N.C. 380, 317 S.E.2d 369 (1984). While defendant contends otherwise, there is sufficient evidence to show that he knew or had reasonable grounds to believe that the gun in his possession was stolen, so as to support an instruction on the charge of felonious possession of stolen property.

**TRAFALGAR HOUSE CONSTRUCTION v. MSL ENTERPRISES, INC.**

[128 N.C. App. 252 (1998)]

In this case, defendant's co-conspirator, Devon Jones, testified at trial that he was with defendant at the time of the 20 January 1996 robbery; that he had previously seen the stolen gun, used in the commission of the robbery, in the glove compartment of defendant's vehicle; and that defendant had told him that the gun was stolen from the Laurindale area of Jacksonville. Moreover, the owner of the gun, Reginald Waters, testified that he lived on the Shamrock side of Laurindale; that the gun had been stolen from him sometime during the second week of January 1996; and that he had identified the gun, taken from the robber by Mordica, as being his. In light of these facts, we conclude that the trial court did not err in submitting the charge of felonious possession of stolen property to the jury.

Finally, defendant contends that the trial court's errors in admitting inadmissible evidence and excluding his proffered evidence on cross-examination resulted in cumulative prejudice to defendant and created a hostile trial environment, thereby resulting in impermissible prejudice to defendant and rendering his trial unfair. A thorough review of the record discloses no such errors, and accordingly, this argument is summarily overruled.

In light of all of the foregoing, we hold that defendant enjoyed a fair trial, free from prejudicial error.

No error.

Judges LEWIS and WALKER concur.