STATE v. RICE

[129 N.C. App. 715 (1998)]

Dismissed in part and reversed in part.

Judges WYNN and MARTIN, John C., concur.

━━━━━━━━━━

STATE OF NORTH CAROLINA v. VAUGHN MICHAEL RICE, DEFENDANT

No. COA96-1486

(Filed 16 June 1998)

## 1. Criminal Law § 1094 (NCI4th Rev.)— second-degree murder—Structured Sentencing—prior record level—1972 kidnapping conviction

The trial court did not err when sentencing defendant for second-degree murder by assigning points to a 1972 kidnapping guilty plea when calculating his prior record level. Although defendant contends that common law kidnapping is no longer a crime in North Carolina because it was replaced by a statutorily defined offense, N.C.G.S. § 15A-1340.14(c) states that the classification assigned to an offense is that denominated at the time of the offense for which the offender is being sentenced. Moreover, the Structured Sentencing Act generally provides for more severe punishment for recidivist crimes and disregarding defendant's prior kidnapping conviction would contradict legislative intent.

## 2. Criminal Law § 1093 (NCI4th Rev.)— second-degree murder—Structured Sentencing—prior kidnapping conviction—points assigned

The trial court did not err when sentencing defendant for second-degree murder by calculating and assigning four points to defendant's 1972 prior kidnapping offense pursuant to N.C.G.S. § 15A-1340.14(b) even though defendant argued that kidnapping constituted a misdemeanor at common law (the statute providing that kidnapping was unlawful in 1972 did not define the crime and kidnapping was therefore construed according to the common law definition.) It is consistent with both the provisions and the spirit of the Structured Sentencing Act to assign a prior offense which has been superseded by a substantially similar crime the same number of prior record level points as that offense would receive under the definition in force when the current offense was committed. Moreover, in an abundance of caution, the trial

court assessed the point total attributable to second-degree kidnapping based upon the absence of all requisite elements of first-degree kidnapping.

### 3. Criminal Law § 1077 (NCI4th Rev.)— second-degree murder—Structured Sentencing—victim impact statement

The trial court did not abuse its discretion when sentencing defendant for second-degree murder by admitting a victim impact statement. The trial court found no aggravating factors based upon recitations contained in the statement, defendant was not deprived of his right to be notified of information tending to aggravate his punishment without an opportunity to explain or refute it, and defendant failed to show that the result would have been materially more favorable had the statements not been admitted because his sentence was within the statutory presumptive range and there were no findings of aggravation.

### 4. Criminal Law § 69 (NCI4th Rev.)— second-degree murder—body recovered on United States Forest Service property—jurisdiction

Defendant's contention in a second-degree murder prosecution that the trial court erred by dismissing his motion for appropriate relief based on exclusive jurisdiction in the federal courts because the body was found on Forest Service property was without merit. Under 16 USC 480, the states retain civil and criminal jurisdiction over the national forests and, under N.C.G.S. § 104-32, North Carolina reserved concurrent power to enforce the criminal law over any lands as to which any legislative jurisdiction may be ceded to the United States.

Appeal by defendant from judgment entered 30 August 1996 by Judge James L. Baker, Jr. in Yancey County Superior Court. Heard in the Court of Appeals 10 September 1997.

*Attorney General Michael F. Easley, by Associate Attorney General Teresa L. Harris, for the State.*

*Dennis L. Howell, for defendant-appellant.*

JOHN, Judge.

Defendant appeals judgment entered 30 August 1996 upon his 2 July 1996 guilty plea to the charge of second-degree murder. Defendant contends the trial court erred (1) in its determination of

STATE v. RICE

[129 N.C. App. 715 (1998)]

his prior record level and in sentencing him at that level, (2) by admitting into evidence a victim impact statement, and (3) by dismissing his motion for appropriate relief without first conducting a hearing thereon. We hold the trial court did not err.

Pertinent facts and procedural history include the following: At approximately 9:00 a.m. on 14 August 1995, the body of defendant's sister, Willie Mae Rice Doan (Doan), was discovered on United States Forest Service property beside Forest Service Road 472 (the road). A warrant was issued for defendant's arrest 21 August 1995, and on 2 February 1996 he surrendered to law enforcement officers. On 2 July 1996, defendant pleaded guilty to the charge of second-degree murder, and a sentencing hearing (the hearing) was held during the 26 August 1996 criminal session of Yancey County Superior Court.

Following the presentation of evidence at the hearing, the trial court determined defendant had accumulated 15 prior record points as follows: (1) six points for one prior conviction of second-degree rape, a Class C felony, (2) four points for a prior conviction of common law robbery, (3) one point in consequence of the current offense having been committed while defendant was on post-release supervision, and (4) four points based upon a prior plea of guilty to a 17 February 1972 kidnapping. Regarding the latter, the trial court, after examining the applicable court file, including the indictment, the transcript of plea, as well as the judgment and commitment, concluded that all the elements of first-degree kidnapping were not present and assigned the point total appropriate for a conviction of second-degree kidnapping.

The court thereupon determined defendant fell within prior record level V and elected to sentence him within the presumptive range, obviating the necessity of finding factors in aggravation or mitigation. Judgment was entered 30 August 1996, and defendant was ordered imprisoned for a minimum term of 243 months and a maximum term of 301 months. He entered written notice of appeal that same day.

On 25 September 1996, defendant filed a motion for appropriate relief, contending the trial court's judgment must be vacated on grounds that jurisdiction lay exclusively in the federal court. The court summarily dismissed defendant's motion 7 October 1996, and he filed notice of appeal 9 October 1996.

[1] Defendant first maintains the trial court erred in calculating his prior record level (PRL) alternatively either (a) by assigning

any points to the 1972 kidnapping guilty plea, because common law kidnapping "is no longer a crime in the State of North Carolina," having been superceded by a statutorily defined offense at the time of Doan's murder, or (b) by considering the prior offense a felony, rather than a misdemeanor, for sentencing purposes. We reject both arguments.

The record on appeal includes defendant's stipulation that he pleaded guilty on 17 February 1972 to the charge of kidnapping and was sentenced pursuant to the pre-1975 version of N.C.G.S. § 14-39 (1933) (former G.S. § 14-39). Effective 1 July 1975, G.S. § 14-39 was revised (revised G.S. § 14-39) whereby it "statutorily define[d] kidnapping and supersede[d] the common law definition." *State v. Holmon*, 36 N.C. App. 569, 572, 244 S.E.2d 491, 493 (1978). Thus, defendant is correct that the common law definition of kidnapping was replaced by the statutory definition contained in revised G.S. § 14-39. *See id.* It does not necessarily follow, however, that a common law kidnapping conviction should be disregarded when computing a defendant's PRL pursuant to the Structured Sentencing Act (the Act).

The Act, under which defendant was sentenced for Doan's murder, mandates that the trial court ascertain a defendant's PRL before imposing sentence. N.C.G.S. § 15A-1340.13(b) (1997). This is accomplished by assigning a certain number of points, as dictated by N.C.G.S. § 15A-1340.14(b) (1997), to each prior conviction, and thereafter "comparing the point total calculated to the range of point totals corresponding to each prior record level as listed in G.S. 15A-1340.14(c)." *State v. Bethea*, 122 N.C. App. 623, 626, 471 S.E.2d 430, 432 (1996). The statute further provides that:

[i]n determining the prior record level, the classification of a prior offense is the classification assigned to that offense at the time the offense for which the offender is being sentenced is committed.

G.S. § 15A-1340.14(c).

We begin by rejecting defendant's initial contention that the trial court erroneously assigned prior record points to his 1972 conviction for the crime of kidnapping, and hold that conviction constitutes a prior conviction for purposes of sentencing under the Act. *See* N.C.G.S. § 15A-1340.11(7) (1997) ("[a] person has a prior conviction when . . . [he] has been previously convicted of a crime . . . .").

According to the language of G.S. § 15A-1340.14(c), it is the prior "offense" which is subject to classification, albeit to the classification currently assigned to that offense. Defendant's argument seeks to impose provisions and requirements which are not contained in the section. Specifically, nothing in the language of the section indicates it would be ineffective in the event of a change in the elements of an offense. Rather, the section states that the classification assigned to an offense is that denominated "at the time the offense for which the offender is being sentenced [was] committed." G.S. § 15A-1340.14(c).

Defendant was convicted in 1972 of the offense of kidnapping and received a life sentence. Upon thorough review of the record, we determine the trial court properly classified that offense according to its designation as second-degree kidnapping at the time of the instant offense, i.e., the murder of Doan. *See id.*

Moreover, assuming *arguendo* there is merit to defendant's assertion that G.S. § 15A-1340.14 is ambiguous, it is well established that:

> The cardinal rule of statutory construction is that "the intent of the legislature controls the interpretation of a statute." *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995). In determining legislative intent, we "should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Id.* We must insure that "the purpose of the legislature in enacting [the statute] . . . is accomplished." *Commissioner of Insurance v. Automobile Rate Office*, 293 N.C. 365, 392, 239 S.E.2d 48, 65 (1977).

*Bethea*, 122 N.C. App. at 627, 471 S.E.2d at 432.

Because the Act "generally provides for more severe punishment for recidivist crimes," *id.* at 628, 471 S.E.2d at 433, the indisputable legislative intent is that all prior convictions be considered in sentencing. Disregarding defendant's prior kidnapping conviction would therefore contradict legislative intent. *See id.*

[2] In support of his second argument that the trial court erroneously assigned more than one prior record point to the kidnapping conviction, defendant maintains G.S. § 15A-1340.14 does not specifically set forth the method for classifying a prior offense which has subsequently been superseded. Therefore, he continues, because kidnapping constituted a misdemeanor at common law, the trial court impermissibly assigned four sentencing points to the offense as opposed to a single point based upon its misdemeanor status. We do not agree.

We first reemphasize that subsection (c) of the statute directs the trial court to consider the classification of a prior offense according to its classification at the time of commission of the current charge. Further, subsection (e), entitled "Classification of Prior Convictions From Other Jurisdictions," is also instructive and provides in pertinent part:

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

G.S. § 15A-1340.14(e).

Therefore, it is consistent with both the provisions and the spirit of the Act to assign a prior offense—subsequently superceded by a substantially similar crime in effect at the time of the current charge—the same number of prior record level points as that offense would receive under the definition in force when the current offense was committed.

Former G.S. § 14-39 "merely provided that kidnapping was unlawful and did not define the crime." *State v. Fulcher*, 34 N.C. App. 233, 236, 237 S.E.2d 909, 911 (1977), *aff'd*, 294 N.C. 503, 243 S.E.2d 338 (1978). It was therefore "construed according to the common-law definition." *State v. Lowry* and *State v. Mallory*, 263 N.C. 536, 541, 139 S.E.2d 870, 874, *appeal dismissed and cert. denied*, 382 U.S. 22, 15 L. Ed. 2d 16 (1965). Kidnapping was defined at common law as "the unlawful taking and carrying away of a person by force or fraud and against his will," *Fulcher*, 34 N.C. App. at 236, 237 S.E.2d at 912, or " 'false imprisonment aggravated by conveying the imprisoned person to some other place.' " *Id.* (quoting *State v. Harrison*, 145 N.C. 408, 417, 59 S.E. 867, 870-71 (1907)). The common law classified kidnapping as a misdemeanor. *Lowry and Mallory*, 263 N.C. at 540, 139 S.E.2d at 873.

At the time relevant for sentencing under G.S. § 15A-1340.14(c) (i.e., the time of Doan's murder), the offense of kidnapping was defined in revised G.S. § 14-39 as follows:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kid-

napping if such confinement, restraint or removal is for the purpose of:

    (1)  Holding such other person for a ransom or as a hostage or using such other person as a shield; or

    (2)  Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

    (3)  Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

    (4)  Holding such other person in involuntary servitude . . . .

(b) **(Effective January 1, 1995)** There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C.G.S. § 14-39 (1993).

The trial court found that former G.S. § 14-39 was "substantially similar" to revised G.S. § 14-39, and consequently assigned four prior record level points. It is apparent the two definitions are indeed "substantially similar." Moreover, in an abundance of caution, the trial court assessed the point total attributable to second-degree kidnapping based upon the absence of all requisite elements of first-degree kidnapping. In short, the trial court did not err in calculating and assigning four points to defendant's prior kidnapping offense pursuant to G.S. § 15A-1340.14(b).

[3] Defendant next argues the trial court erred by admitting into evidence a victim impact statement, contending "this evidence was prejudicial to a fair and impartial sentencing hearing." This contention is unfounded.

Questions regarding admissibility of evidence are committed to the sound discretion of the trial court. N.C.R. Evid. 104; *State v. Wortham*, 80 N.C. App. 54, 62, 341 S.E.2d 76, 81 (1986), *rev'd on other grounds*, 318 N.C. 669, 351 S.E.2d 294 (1987). To establish an abuse of

that discretion, a defendant must show: (1) unfair prejudice, (2) denial of a substantial right, and (3) that the result of the proceeding would have been materially more favorable to the defendant had the error not been made. *McNabb v. Town of Bryson City*, 82 N.C. App. 385, 389, 346 S.E.2d 285, 288 (1986), *appeal dismissed*, 319 N.C. 397, 354 S.E.2d 239 (1987).

We observe first that our General Assembly has promoted the use of victim impact statements at criminal proceedings, *see* N.C.G.S. § 15A-825 (1997) ("reasonable effort [should be made] to assure that each victim . . . [h]as a victim impact statement prepared for consideration by the court"), and such statements have been held admissible at sentencing hearings. *State v. Midyette*, 87 N.C. App. 199, 204, 360 S.E.2d 507, 510, *aff'd*, 322 N.C. 108, 366 S.E.2d 440 (1988) ("[t]rial judges in North Carolina are allowed wide latitude in conducting sentencing hearings . . . and are encouraged to seek all relevant information which may be of assistance in determining an appropriate sentence. . . . Formal rules of evidence do not apply. . . . The trial court may properly consider a victim's statement relating to a defendant's sentence.") (citations omitted).

Moreover, in *State v. Phillips*, 325 N.C. 222, 224-25, 381 S.E.2d 325, 326-27 (1989), our Supreme Court ruled defendant Phillips was not prejudiced by admission of victim impact statements, partly because the United State Supreme Court had not prohibited the use of such statements in non-capital cases. *Id.* (citing *Booth v. Maryland*, 482 U.S. 496, 509, 96 L. Ed. 2d 440, 452 (1987), *overruled by Payne v. Tennessee*, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 736 (1991)) (Eighth Amendment of the Federal Constitution erects no per se bar to admission of victim impact statements in capital cases).

An additional basis for the Court's holding in *Phillips* was that the trial court had made no finding of aggravating factors based upon information contained in the statements. *Phillips*, 325 N.C. at 224, 381 S.E.2d at 326. The Court further reasoned Phillips had not been deprived of his

> right to have brought to his attention all information received by the court which tended to aggravate punishment with the full opportunity to refute or explain it[,]

in view of his failure, upon being shown the statements at the sentencing hearing, either to move for a continuance in order to obtain rebuttal evidence, or to issue subpoenas to examine personally the

proponents of the statements. *Id.* at 224-25, 381 S.E.2d at 326. Finally, the Court noted the two victims who authored the statements also testified regarding the matters contained therein and were cross-examined by the defendant's counsel. *Id.* at 225, 381 S.E.2d at 327.

As in *Phillips*, the trial court herein found no aggravating factors based upon recitations contained in the victim impact statements. Nor was defendant deprived of his right to be notified of information tending to aggravate his punishment without an opportunity to explain or refute it. *See id.* at 224, 381 S.E.2d at 326 ("Sixth Amendment does not include the right to discovery or notice of evidence to be presented") (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 94 L. Ed. 2d 40 (1987)).

On the latter point, defendant interjects that, because the hearing occurred on the final day of the criminal court session, there was "no time . . . to request a continuance in the matter." However, the record contains no indication defendant, after viewing the statements, lacked time to *request* a continuance for the purpose of gathering rebuttal evidence or to issue subpoenas for cross-examination of individuals proffering the statements.

Lastly, because defendant's sentence was within the statutory presumptive range and there were no findings of aggravation, he has failed to show the result of the hearing would have been materially more favorable to him had the statements not been admitted. *See Phillips*, 325 N.C. at 224, 381 S.E.2d at 326; *McNabb*, 82 N.C. App. at 389, 346 S.E.2d at 288.

[4] In his remaining argument, defendant asserts the trial court erred by summarily dismissing his motion for appropriate relief (MAR), advanced pursuant to N.C.G.S. § 15A-1415 (1997). The State responds that the identical allegations contained in the MAR were previously alleged in defendant's 30 September 1996 petition for writ of habeas corpus, denied by this Court on 16 October 1996. Therefore, concludes the State, defendant's final assignment of error must be dismissed since "one panel of the Court of Appeals may not overrule the decision of another panel on the same question in the same case." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).

While the State's contention may indeed have merit, it is well established that defendant would in any event have had no entitlement to a hearing on his MAR if the trial court properly "determine[d]

that the motion [wa]s without merit." N.C.G.S. § 15A-1420(c)(1) (1997). As grounds for his motion, defendant argued "jurisdiction in this case would lie only in the federal courts" and contended North Carolina courts "lack[ed] jurisdiction over the subject matter of this case in that the body of the decedent was found upon lands owned by the United States." The trial court denied defendant's motion finding "no probable grounds for relief." The trial court did not err.

16 U.S.C.S. § 480 (1994), entitled "Civil and criminal jurisdiction," provides:

> The jurisdiction, both civil and criminal, over persons within such forest reservations [national forests] shall not be affected or changed by reason of the existence of such reservations [national forests], except so far as the punishment of offenses against the United States therein is concerned; the intent and meaning[] of this provision being that the State wherein any such reservation [national forest] is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or be absolved from their duties as citizens of the State.

*See also United States v. County of Fresno*, 429 U.S. 452, 455, 50 L. Ed. 2d 683, 687 (1977) ("Pursuant to 16 USC § 480 . . . the States retain civil and criminal jurisdiction over the national forests notwithstanding the fact that the national forests are owned by the Federal Government.").

In addition, under N.C.G.S. § 104-32 (1985), the North Carolina General Assembly "reserved over any lands as to which any legislative jurisdiction may be ceded to the United States . . . concurrent power to enforce the criminal law." *See also State v. DeBerry*, 224 N.C. 834, 836, 32 S.E.2d 617, 618 (1945) (state legislature may qualify its consent to acquisition by the United States of lands within state's borders so as to retain jurisdiction over enforcement and administration of state criminal laws).

Assuming *arguendo* that discovery of Doan's corpse on federal lands was determinative on the issue of the location where her murder was effected, defendant's MAR was, nevertheless, without merit. *See* 16 U.S.C.S. § 480; *County of Fresno*, 429 U.S. at 455, 50 L. Ed. 2d at 687; G.S. § 104-32; *DeBerry*, 224 N.C. at 836, 32 S.E.2d at 618. Accordingly, the trial court did not err by ordering summary dismissal thereof. *See* G.S. § 15A-1420(c)(1).

No error.

Judges LEWIS and SMITH concur.