STATE OF NORTH CAROLINA v. DAVID ORDIS LAWRENCE

No. COA10-348

(Filed 1 March 2011)

**1. Kidnapping— attempted—overt act—lying in wait**

The trial court did not err by not dismissing two charges of attempted kidnapping where defendant was never in the presence of the intended victim. There was evidence of intent and preparation and, assuming that those acts were not more than preparations, defendant's hiding in the woods behind the victim's house and waiting for her to come home, and fleeing only upon the arrival of law enforcement and armed neighbors, was an act beyond mere preparation and thus overt.

**2. Kidnapping— attempted—restraint—beyond that inherent in robbery**

The evidence of attempted kidnapping was sufficient to survive defendant's motion to dismiss on the issue of whether the restraint he intended to use was inherent in the intended robbery. Defendant's plans were not only to intercept the victim outside her house and force her back into the house, but also to bind her hands and threaten to douse her with gasoline if she did not cooperate. These were additional acts that would have exposed the victim to greater danger than that inherent in the armed robbery and that were also the kind of danger and abuse the kidnapping statute was designed to prevent.

**3. Appeal and Error— preservation of issues—objection at trial—not different from argument on appeal**

Defendant preserved for appeal the question of whether the trial court should have dismissed one of two conspiracy charges where defendant moved at trial to dismiss all charges, including both conspiracy charges. Although the State contended that this was a different argument from that argued at trial, defendant argued on appeal that there was evidence of only one agreement.

**4. Conspiracy— attempted robberies—one rather than two conspiracies**

There was evidence of only one conspiracy rather than two, and one of two convictions was vacated, where the time intervals, participants, objective, and number of meetings indicated only one conspiracy.

**5. Robbery— attempted—lying-in-wait—beyond mere preparation**

The trial court did not err by denying defendant's motions to dismiss two counts of attempted armed robbery where defendant was never in the presence of the intended victim. The evidence established defendant's intent, preparations, and two instances of lying-in-wait, which went beyond mere preparation and were thus overt acts.

**6. Burglary and Unlawful Breaking or Entering— attempted— no entrance onto property—evidence sufficient**

There was sufficient evidence of attempted breaking and entering to survive a motion to dismiss even though defendant and his coconspirators did not enter the intended victim's property. The evidence showed that defendant had the specific intent to break and enter in that defendant was to be the "muscle" when the group intercepted the intended victim outside her home, forced her inside, and robbed her.

**7. Criminal Law— flight—evidence sufficient**

The trial court did not err by instructing the jury on flight where the evidence, viewed in the light most favorable to the State, was sufficient to support the theory that defendant fled the scene to avoid apprehension.

## 8. Burglary and Unlawful Breaking and Entering— attempted —instructions—omitted portion subsequently included

There was no plain error in an instruction on attempted felonious breaking and entering where the trial court initially omitted the part of the instruction concerning an overt act, but later included the missing portion of the instruction and repeated it for the second count of the offense.

## 9. Robbery— instruction—use of weapon—plain error

There was plain error when instructing the jury on conspiracy to commit robbery with a dangerous weapon where the court did not instruct the jury that the charge included the use of a weapon to threaten or endanger the life of the victim, rather than merely a taking through the use of a firearm.

Appeal by Defendant from judgments entered on 27 October 2008 by Judge Douglas B. Sasser in Hoke County Superior Court. Heard in the Court of Appeals 28 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General M. Lynne Weaver, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

David Ordis Lawrence ("Defendant") appeals from a jury verdict finding him guilty of two counts of attempted robbery with a dangerous weapon, two counts of attempted kidnapping, two counts of attempted breaking and entering, and two counts of conspiracy to commit robbery with a dangerous weapon. On appeal, Defendant argues the trial court erred in denying Defendant's motion to dismiss for insufficient evidence as to all charges except one charge of conspiracy to commit robbery with a dangerous weapon. Defendant also contends the trial court erred by instructing the jury on the law of flight as the instruction was not supported by the evidence. After careful review, we find no error in part; reverse and remand in part; grant a new trial in part; and remand for a new sentencing hearing.

## I. Factual and Procedural Background

The State's evidence tended to establish the following events. In late August 2008 in Orlando, Florida, Marlita Williams approached a

couple of her friends about joining her in a robbery of a purported drug dealer who lived in North Carolina. When the two friends, Travis McQueen and his wife, expressed interest in the plan, Marlita told Travis that he could bring one man to assist in the robbery; Travis recruited his friend Bernard King. A few days later, Williams, the McQueens, and King traveled to Fayetteville, North Carolina and began preparations for the robbery.

Two members of the group stole several zip ties from a hardware store, with which they could bind their victim to prevent escape, and stole a car from the hardware store's parking lot for use during the robbery. After casing the homes of several potential victims, the group focused their attention on Ms. Charlise Curtis. Williams believed that a suspected drug dealer, Glenn Artis, was living with Ms. Curtis and her son and would have a significant amount of cash to steal. In order to determine what Ms. Curtis looked like and where she lived, the group stalked Ms. Curtis, observing her at her work-place and following her home to Raeford, North Carolina. They returned to Ms. Curtis' home later that evening, but drove away when neighbors became suspicious of their activities.

Having settled on Ms. Curtis as their target, the group paid a visit to Defendant to recruit him to participate in the robbery. Accepting the offer, Defendant said he was "ready to go" and brandished a semi-automatic pistol from his pocket. Williams instructed the group on their duties for the robbery: King was to be the driver and lookout, while McQueen and Defendant were to be the "muscle" of the plan who would enter the home and rob the victims. Later, Williams borrowed a pistol from a family member so that both McQueen and Defendant would be armed.

On the morning of 29 August 2008, the plan was to intercept Ms. Curtis as she was leaving her home to take her son to school, then to force her back into her home and to rob her. That morning, two men in the group prepared the get-away vehicle by replacing the license plate with a stolen plate and placing a gas can in the car. Later, they filled the gas can with gasoline with which they intended to douse the victim and threaten to set her on fire if she refused to cooperate. King, McQueen, and Defendant drove to the victim's neighborhood where Defendant and McQueen exited the car with their guns and hid in the woods near Ms. Curtis' home. King parked the car near the entrance of Ms. Curtis' driveway and slumped down in the front seat. Suspicious of this activity, two neighbors called 9-1-1. Shortly there-

after, an officer from the sheriff's office arrived on scene and pulled up behind King's car. When the officer activated his lights, King sped away, but then jumped from the car and fled on foot. As the officer gave chase, King ran into the woods to hide, where he saw Defendant and Travis McQueen. King testified that the officer then began his pursuit of Defendant and McQueen as they stashed their guns under some leaves and fled from their hiding place in the woods—" 'cause they see what's going on now.' "

Later that afternoon, Williams, King, McQueen and his wife regrouped without Defendant and discussed whether to rob a different dealer or attempt to rob Ms. Curtis a second time. Despite the attention they drew from the neighbors and the sheriff's office, the group decided they would attempt to rob Ms. Curtis at her home again. In preparation for the second attempt, the group replaced their get-away car by stealing a truck from a mall parking lot, purchased two jump suits and masks, and two prepaid cell phones. King and McQueen returned to the woods near Ms. Curtis' home and retrieved their guns—again prompting the neighbors to call the sheriff's office.

On 30 August 2008, King, the McQueens, and Williams began looking for Defendant to execute their second attempt to rob Ms. Curtis. The group, without Defendant present, discussed robbing a different drug dealer and drove by a potential victim's home to survey the area; ultimately, they resumed the plan to rob Ms. Curtis. That evening, the group picked up Defendant and waited in a parking lot for Ms. Curtis to leave work. Upon receiving word that Ms. Curtis was on her way home, King drove Defendant and his accomplices to her neighborhood. Travis McQueen and Defendant exited the vehicle and hid in the woods close to Ms. Curtis' home while King drove to a nearby gas station to wait. Defendant and McQueen were observed by Ms. Curtis' neighbor, Robert Murray, who called 9-1-1, grabbed his pistol, and walked to Ms. Curtis' yard to investigate.

Murray proceeded to walk towards Ms. Curtis' backyard with his gun, asked Defendant and McQueen what they were doing, and both men fled. Murray alerted another neighbor that Defendant and McQueen were headed in his direction. This second neighbor stopped the two men at gun-point, but both fled again into the woods. While King was waiting in the get-away vehicle at the gas station, a police officer pulled up behind him and King sped away. After a brief chase, King crashed the vehicle and he was arrested. King cooperated with the police, providing details of the plan to rob Ms. Curtis and offered to help locate Defendant.

On 3 September 2008, the police arrested Travis McQueen and his wife, Twanda McQueen. Ms. McQueen cooperated with the police investigation and took the police to Defendant's residence. The police subsequently made numerous attempts to find Defendant and on 30 October 2008 contacted the United States Marshals Service for assistance in finding Defendant. On 8 January 2009, U.S. Marshals arrested Defendant in Lee County, Mississippi.

Defendant was indicted by a Hoke County Grand Jury on 27 October 2008 with two counts of attempted robbery with a dangerous weapon, two counts of attempted kidnapping, two counts of attempted breaking and entering, and two counts of conspiracy to commit robbery with a dangerous weapon. Defendant was tried before Judge Douglas B. Sasser in Hoke County Superior Court beginning on 27 October 2009. At the close of the State's evidence, Defendant made a motion to dismiss all charges for insufficient evidence, which the trial court denied. Defendant renewed his motion to dismiss after formally declining to testify; this motion was also denied. The jury returned guilty verdicts as to all eight charges on 3 November 2009. On 4 November 2009, Defendant was sentenced to consecutive sentences for the attempted robbery charges and the conspiracy to commit robbery with a dangerous weapon with the sentences for attempted breaking and entering to run concurrently; the trial court arrested judgment for both attempted kidnapping charges. Defendant gave oral notice of appeal.

## II. Jurisdiction and Standard of Review

As Defendant appeals from a final judgment, this Court has jurisdiction to hear the appeal pursuant to N.C. Gen. Stat. § 7A- 27(b) (2009). We review the trial court's denial of a motion to dismiss *de novo. State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). This Court, under a *de novo* standard of review, considers the matter anew and freely substitutes its own judgment for that of the trial court. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).

A defendant's motion to dismiss should be denied if "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When ruling on a motion to dismiss, the

trial court must view the evidence in the light most favorable to the State, "making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). "The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *Id.*

## III. Analysis

### A. Attempted Kidnapping

[1] In his first and second arguments on appeal, Defendant contends that the trial court erred in failing to dismiss the two charges of attempted kidnapping for insufficient evidence. Defendant argues the State's evidence on these charges was insufficient to show (1) an attempt to kidnap—because he was never in the presence of the intended victim—and (2) an intent to use force beyond that which is necessary for armed robbery and thus sufficient to constitute the separate crime of kidnapping. We find both arguments to be without merit.

To survive a motion to dismiss, the State must present substantial evidence of each essential element of the charged offense and that the defendant is the perpetrator of the offense. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 597, 573 S.E.2d at 869. When reviewing the sufficiency of the evidence, "[t]he trial court must consider such evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." *State v. Patterson*, 335 N.C. 437, 450, 439 S.E.2d 578, 585 (1994). " '[I]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.' " *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (citation omitted).

The elements of the offense of an attempt to commit a crime are (1) "the intent to commit the substantive offense," and (2) "an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense." *Smith*, 300 N.C. at 79, 265 S.E.2d at 169-70 (citations omitted). The North Carolina General Statutes define kidnapping as the unlawful confinement, restraint, or

removal from one place to another, of a person over the age of 16, without consent, "if such confinement, restraint or removal is for the purpose of . . . . Facilitating the commission of any felony . . . . [or] Doing serious bodily harm to or terrorizing the person so confined, restrained or removed . . . ." N.C. Gen. Stat. § 14-39(a), (a)(2)-(3) (2009); *State v. Pigott*, 331 N.C. 199, 208-09, 415 S.E.2d 555, 560-61 (1992).

On appeal, Defendant first argues that because he was never in the presence of his intended victim, Ms. Curtis, he never began the act of kidnapping, and thus, he never attempted to kidnap Ms. Curtis. Defendant suggests that an overt act sufficient to support a charge of attempted kidnapping would, at a minimum, require Defendant to have been in the presence of his intended victim. We find no support for this proposition. The case law of our state provides that an overt act must be an act beyond mere preparation—that is, the act must " 'stand either as the first or some subsequent step in the direct movement towards the commission of the offense after the preparations are made.' " *State v. Addor*, 183 N.C. 687, 689, 110 S.E. 650, 651 (1922) (citation omitted).

The record on appeal reveals that Defendant's intent was to intercept Ms. Curtis at gunpoint, force her into her home, bind her with zip ties, threaten to burn her with gasoline, and steal any money and drugs in the residence. The record is replete with details of the preparations made by Defendant and his coconspirators: stealing get-away cars, and acquiring cell phones, jump suits, masks, zip ties, gasoline, and guns in order to affect the robbery and kidnapping. Assuming *arguendo* that these acts were no more than mere preparations, Defendant subsequently hid in the woods behind the home of his intended victim, waiting for her to appear, fleeing only upon the arrival of law enforcement and armed neighbors. We conclude this act of lying-in-wait was an act "beyond mere preparation" and thus an overt act for the purposes of the attempted crimes. Consequently, there was substantial evidence to support the charges of attempted kidnapping and it was not error for the trial to deny Defendant's motion to dismiss.

[2] Defendant also argues that the State's evidence was insufficient to survive his motion to dismiss the charges of attempted kidnapping because the restraint he intended to use on his victim was inherent to the intended robbery and thus not a separate and distinct crime under the holdings of *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), and *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981). In *Fulcher*, our

Supreme Court recognized that because some crimes, such as armed robbery, cannot be committed without restraining the victim (by force, fraud or threat), the restraint required to support a conviction for kidnapping under N.C. Gen. Stat. § 14-39 must be restraint that was not merely incidental to the other felony. 294 N.C. at 523, 243 S.E.2d at 351. If, for example, a jury were able to convict a defendant for robbery and kidnaping based on a single act of restraint, that defendant would be subject to double jeopardy. *Id.* "[T]here is no constitutional barrier," however, "to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping is a separate, complete act, independent of and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352.

Under this reasoning, the *Fulcher* Court found that where the defendant in that case subdued his victims by threatening them with a knife, then bound their hands with tape, and forced them to perform oral sex, the defendant had committed two separate crimes: kidnapping and a crime against nature. *Id.* The crime of kidnapping was completed upon securing submission of his victims by threat of the knife in order to commit the felony crime against nature. *Id.* ("The restraint . . . was separate and apart from, and not an inherent incident of, the commission upon her of the crime against nature, though closely related thereto in time."); *see Pigott*, 331 N.C. at 210, 415 S.E.2d at 561 (holding the restraint necessary for armed robbery was complete upon threatening the victim with a gun, while the defendant's additional action of binding the victim's hands and feet exposed the victim to greater danger and supported a separate charge for kidnapping).

The Supreme Court applied the holding of *Fulcher* in *State v. Irwin*, further clarifying that the analysis should be whether the actions by the defendant alleged to constitute kidnapping exposed the victim to greater danger than that which is inherent in the underlying felony, or exposed the victim to the kind of danger or abuse the kidnapping statute was intended to prevent. *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446. The defendant in *Irwin* robbed a drug store and forced an employee, at knifepoint, from the front of the store to the prescription counter in the back of the store in order to steal prescription drugs. This movement of the victim was a "mere technical asportation," an integral part of the attempted robbery and would not support a kidnapping conviction. *Id.*

Defendant cites *State v. Ripley*, 360 N.C. 333, 334, 626 S.E.2d 289, 290 (2006), in which, during the robbery of a motel, the defendant

forced motel patrons to lie on the floor of the motel lobby. Several individuals entering the motel saw the robbery in progress and turned to leave. *Id.* The defendant ordered these individuals, at gunpoint, to enter the lobby and lie on the floor with the other victims. *Id.* at 334-35, 626 S.E.2d at 290. The Supreme Court found this movement from outside of the motel to inside the lobby to be a "mere technical asportation" and not a kidnapping. *Id.*

Defendant also cites this Court's holding in *State v. Raynor*, 128 N.C. App. 244, 495 S.E.2d 176 (1998), for support of his argument that *removal* coupled with *restraint* of a robbery victim does not support a separate charge for kidnapping. Contrary to Defendant's assertion, the *Raynor* Court concluded the defendant's actions in that case *did* support a charge for kidnapping separate from the charge of armed robbery. 128 N.C. App. at 250, 495 S.E.2d at 180. Judge Timmons-Goodson (now Associate Justice Timmons-Goodson) concluded that "more than a 'mere technical asportation' occurred" when the defendant restrained his victim at gunpoint at the front door of the victim's home and removed him to his bedroom to take money from his wallet; and when the defendant removed the victim from the bedroom to the kitchen where he attempted to tie up the victim. *Id.* The restraint used by the defendant was more than was necessary for the armed robbery. *Id.*

While we agree with Defendant's statement of the case law of *Irwin* and *Ripley*, we cannot agree with his application of the law to the facts of this case. Defendant insists that the force he intended to use on Ms. Curtis was merely the force necessary for the intended robbery and indistinguishable from the facts presented in *Irwin* and *Ripley*. Testimony elicited at trial, however, established that Defendant's plans on 29 and 30 August 2008 were not only to intercept Ms. Curtis outside of her home and force her back into the house at gunpoint, but also to bind her hands with zip ties so that she could not move, and threaten to douse her with gasoline if she would not cooperate. These additional acts of restraint by force and by threat provided substantial evidence that Defendant's intended actions would have not only exposed Ms. Curtis "to greater danger than that inherent in the armed robbery itself," but also "subjected [her] to the kind of danger and abuse the kidnapping statute was designed to prevent." *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446. Therefore, we conclude the trial court did not err in failing to dismiss the two attempted kidnapping charges.

## B. Conspiracy to Commit Robbery with a Dangerous Weapon

In his third issue on appeal, Defendant claims the trial court erred in failing to dismiss, due to insufficient evidence, one of two charges of conspiracy to commit robbery with a dangerous weapon. The State indicted Defendant with two counts of conspiracy to commit robbery with a dangerous weapon against Ms. Curtis on 29 August 2008 and again on 30 August 2008. Defendant asserts that the State's evidence was sufficient to allege only one conspiracy for the armed robbery of Ms. Curtis; having failed to achieve the objective of the conspiracy on the first attempt, Defendant and his accomplices returned the next day to continue their efforts. Therefore, Defendant argues, the constitutional protections from double jeopardy bar the State from charging him with multiple indictments for this single conspiracy. *See State v. Griffin*, 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993). We agree.

**[3]** Before we reach Defendant's argument, we first address the State's argument that Defendant failed to preserve this issue for appeal. At trial, Defendant moved to dismiss all charges including both charges of conspiracy. On appeal, Defendant argues the trial court should have dismissed only one of the two charges of conspiracy. The State contends this is a different argument than Defendant presented at trial and thus Defendant failed to preserve the issue for appeal. N.C. R. App. P. 10(a)(1) (2011) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.") Furthermore, because Defendant did not request we review the alleged error for plain error, the State contends, the issue is not properly before this Court pursuant to Rule 10(a)(4) of our Rules of Appellate Procedure. We disagree.

The record reveals that Defendant first moved to dismiss all charges at the close of the State's evidence: "[Defendant's counsel]: Your Honor, it would be our motion at this time to dismiss at the close of the State's evidence. It would be our position that given the light—even in the light most favorable to the State that they have failed to carry their burden, Your Honor." (T. p. 784.) The trial court denied this motion. Defendant then renewed his motion to dismiss after formally declining to testify; this motion was also denied. Thus, the record shows Defendant moved to dismiss all charges on the grounds that "the State . . . failed to carry their burden."

On appeal, Defendant contends there was insufficient evidence to support two counts of conspiracy, because the State, "having elected to charge separate conspiracies, must prove not only the existence of at least two agreements but also that they were separate." *State v. Rozier*, 69 N.C. App. 38, 53, 316 S.E.2d 893, 902, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). Defendant argues that two conspiracy convictions cannot stand where there is evidence of only one agreement—or that the State "failed to carry their burden." Therefore, we conclude Defendant preserved this issue for appellate review.

**[4]** A criminal conspiracy is "an agreement, express or implied, between two or more persons, to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means." *State v. Gell*, 351 N.C. 192, 209, 524 S.E.2d 332, 343 (2000). The commission of a criminal conspiracy is complete upon the formation of the agreement to achieve its objective, but it is a continuing offense and may continue over an extended period of time, even a number of years, so long as efforts to pursue the objective continue. *See State v. Brewer*, 258 N.C. 533, 543, 129 S.E.2d 262, 270, *appeal dismissed*, 375 U.S. 9 (1963). Multiple agreements or overt acts which arise from a single agreement do not permit prosecution for multiple conspiracies. *Id.* Where the State charges a defendant with separate conspiracies, the State must prove "not only the existence of at least two agreements but also that they were separate." *Rozier*, 69 N.C. App. at 53, 316 S.E.2d at 902. As there is no bright-line test for whether multiple conspiracies exist in a given case, "the essential question is the nature of the agreement or agreements . . . but factors such as time intervals, participants, objectives, and number of meetings all must be considered." *Id.* at 52, 316 S.E.2d at 902.

In the present case, the *Rozier* factors—time intervals, participants, objectives, and number of meetings—lead us to conclude there was one conspiracy. It is undisputed that the objective on each attempt was the same, to rob Ms. Curtis, and the participants involved in each attempt were the same. The time interval between the two attempts was approximately 36 hours. Additionally, Defendant's coconspirator testified that on the second attempt the group did not agree to a new plan: "The next day rolls around, so we [sic] trying to look for [Defendant] . . . . 'cause we [sic] trying to go for this same plan again, trying to do the same thing again." Testimony also revealed that while Defendant's coconspirators considered robbing a different victim, they did so as a back-up plan in case the robbery of Ms. Curtis was unsuccessful. The State contends, how-

ever, that because Defendant's coconspirators met on the night of and the day after the first attempt, acquired additional materials to use during the execution of their plan, made slight modifications on how to execute their plan, and briefly considered robbing a different victim, the coconspirators had abandoned their first conspiracy and formed a second conspiracy.

The State cites this Court's decision of *State v. Roberts*, 176 N.C. App. 159, 625 S.E.2d 846 (2006), as their sole authority for this argument. The State's reliance on this case is misplaced. In *Roberts*, this Court upheld the defendant's conviction for two separate conspiracies where the defendant agreed to participate in two robberies involving the same coconspirators, committed on two consecutive days, but committed against two distinct and unspecified victims. *Id.* at 161, 167, 625 S.E.2d at 848, 852. The present case is distinguishable as Defendant's agreement, on the first and the second attempt, was to rob the same individual, Charlise Curtis. We are persuaded the evidence presented supports only a single conspiracy for the robbery of Ms. Curtis with a dangerous weapon and the trial court erred in denying Defendant's motion to dismiss as to one of the two charges of conspiracy.

As in *Rozier*, the trial court in the present case did not permit the jury to find a single conspiracy based on the State's two indictments. The jury, however, found Defendant guilty on both counts of conspiracy, "which is tantamount in this case to finding [him] guilty of the single larger conspiracy presented by the evidence." *Rozier*, 69 N.C. App. at 54, 316 S.E.2d at 903. The State presented evidence that the conspiracy began on 29 August 2008 and continued through 30 August 2008. The indictment in 08 CRS 52088 alleged that Defendant entered into a conspiracy to commit robbery with a dangerous weapon on 29 August 2008, while the indictment in 08 CRS 52092 alleged that a conspiracy was formed on 30 August 2008. Thus, as in *Rozier*, "the earlier of the conspiracy convictions should stand." *Id.* The trial court erred in denying Defendant's motion to dismiss the indictment for the 30 August 2008 conspiracy. Accordingly, we reverse Defendant's conviction on 08 CRS 52092; there was no error in denying Defendant's motion to dismiss for 08 CRS 52088.

### C. Attempted Robbery with a Dangerous Weapon

[5] Defendant's next two issues on appeal are that the trial court erred in failing to dismiss, due to insufficient evidence, both charges of attempted robbery with a dangerous weapon. Defendant contends

that the evidence was insufficient to show that his actions amounted to an attempt as he was never in the presence of the intended victim. We disagree.

A person commits the felony of attempted robbery with a dangerous weapon "when a person, with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result." *State v. Allison*, 319 N.C. 92, 96 352 S.E.2d 420, 423 (1987) (citing *Irwin*, 304 N.C. 93, 282 S.E.2d 439).

A conviction for an attempted crime requires the intent to commit the underlying offense and an overt act which goes beyond "mere preparation" but does not amount to the completed offense. *Smith*, 300 N.C. at 79, 265 S.E.2d at 169-70. Additionally, an overt act is one that " 'stand[s] either as the first or some subsequent step in the direct movement towards the commission of the offense after the preparations are made.' " *Addor*, 183 N.C. at 689, 110 S.E. at 651 (citation omitted).

We conclude the evidence was sufficient to support Defendant's conviction for attempted robbery. The testimony elicited from Defendant's coconspirator established that Defendant's intent was to intercept Ms. Curtis at gunpoint, force her into her home, bind her with zip ties, threaten to burn her with gasoline, and steal any money and drugs in the residence. Additionally, we discuss above the preparations Defendant and his coconspirators made to ensure the success of their plan: stealing get-away cars, and acquiring cell phones, jump suits, masks, zip ties, gasoline, and guns. Assuming *arguendo* that these acts were mere preparation, Defendant subsequently hid in the woods behind the home of his intended victim, waited for her to appear, and fled only upon the arrival of law enforcement and an armed neighbor. We conclude these acts of lying-in-wait, on both 29 and 30 August 2008, were acts "beyond mere preparation" and thus overt acts for the purposes of the attempted crimes. Consequently, there was substantial evidence to support the charges of attempted robbery with a dangerous weapon and it was not error for the trial court to deny Defendant's motion to dismiss.

### D. Attempted Breaking and Entering

[6] Defendant's sixth and seventh issues on appeal allege the trial court erred in failing to dismiss, due to insufficient evidence, both charges of attempted breaking and entering. Specifically, Defendant

contends the evidence failed to show he and his coconspirators entered the property at Ms. Curtis' residence and thus they could not have *attempted* to enter her residence. We disagree.

Under North Carolina law, the felony of breaking and entering requires "(1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992); N.C. Gen. Stat. § 14-54(a) (2009). As stated above, the charge of attempting a crime requires the showing of an overt act performed with the specific intent to commit the underlying crime. *Smith*, 300 N.C. at 79, 265 S.E.2d at 169-70.

The evidence produced at trial tended to show that Defendant had the specific intent of breaking and entering the home of Ms. Curtis for the purpose of committing an armed robbery. Defendant's coconspirator testified that Defendant's role in the conspiracy was to be the "muscle." On both attempts, 29 and 30 August 2008, the plan was to intercept Ms. Curtis outside of her home, force her back inside, and rob her once she was restrained inside the home. If necessary, Defendant was to kick in the door of the home to gain entry. Thus, there was substantial evidence to support each element of both attempted breaking and entering indictments and the trial court did not err by dismissing Defendant's motion to dismiss.

### E. Jury Instruction on the Law of Flight

[7] Defendant next argues that the trial court erred by instructing the jury on the law of flight as the evidence was insufficient to warrant the instruction. We disagree.

On appeal, a trial court's decisions regarding jury instructions are reviewed *de novo*. *State v. Jenkins*, —— N.C. App. ——, ——, 688 S.E.2d 101, 105, *disc. review denied*, 364 N.C. 245, 698 S.E.2d 665 (2010). When a jury is charged with an instruction that is not supported by the evidence, a new trial is warranted. *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995). "So long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given." *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977). Regardless of the reason for the flight, "[t]he relevant inquiry is whether the evidence shows that defendant left the scene of the crime and took steps to avoid apprehension." *State v. Grooms*, 353 N.C. 50, 80, 540 S.E.2d 713, 732 (2000), *cert. denied*, 534 U.S. 838 (2001). Furthermore, our Supreme Court has recognized that, gener-

ally, "testimony of a law enforcement officer to the effect that he searched for the accused without success after the commission of the crime" is competent evidence of flight. *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973).

Defendant argues that the State's only evidence of his involvement in the crimes charged is that two of his alleged coconspirators testified to his involvement; the testimony by Detective Kivett of the Hoke County Sheriff's Department that after the crimes occurred he searched for Defendant in the community, but was not able to locate him; and that Defendant was arrested in Mississippi four months after the crimes occurred in North Carolina. Defendant's summary of the State's evidence is incomplete.

Bernard King testified that during the first robbery attempt on 29 August 2008, Defendant and Travis McQueen fled from a deputy sheriff as he approached Defendant hiding in the woods behind Ms. Curtis' home—" 'cause they see what's going on now." During the second attempt, on 30 August 2008, an armed neighbor confronted the two men as they waited behind the Curtis residence. As the neighbor held the two men at gunpoint and called 9-1-1, the men fled. Additionally, a detective with the Hoke County Sheriff's Department testified that upon learning of Defendant's name and address, he canvassed the neighborhood informing residents that he was looking for Defendant. On 8 January 2009, Defendant was arrested by U.S. Marshals in Lee County, Mississippi. We conclude this evidence, viewed in the light most favorable to the State, was sufficient to support the theory that Defendant fled the scene in order to avoid apprehension by law enforcement officers. Accordingly, the trial court did not err by instructing the jury on the law of flight.

### F. Jury Instruction on Attempted Felonious Breaking and Entering

[8] In his next argument on appeal, Defendant contends the trial court committed plain error by incorrectly instructing the jury on attempted felony breaking and entering. Specifically, Defendant contends that, upon instructing the jury on the elements of attempt, the trial court failed to instruct the jury that it must find beyond a reasonable doubt that Defendant committed an overt act designed to bring about the intended crime but fell short of doing so. As a result of this error, Defendant insists he was prejudiced, warranting a new trial. We disagree.

We review a trial court's jury instruction

> contextually and in its entirety. The charge will be held to be
> sufficient if it presents the law of the case in such manner as to
> leave no reasonable cause to believe the jury was misled or
> misinformed . . . . The party asserting error bears the burden of
> showing that the jury was misled or that the verdict was affected
> by [the] instruction. Under such a standard of review, it is not
> enough for the appealing party to show that error occurred in the
> jury instructions; rather, *it must be demonstrated that such error
> was likely, in light of the entire charge, to mislead the jury.*

*State v. Blizzard,* 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (emphasis added) (internal citations and quotation marks omitted). Furthermore, Defendant concedes that he made no objection at trial to the trial court's jury instruction on attempted felonious breaking and entering. He thereby waived his right to object on appeal under our Rules of Appellate Procedure. N.C. R. App. P. 10(b)(1) (2011). Defendant, however, requests this Court to examine the issue for plain error. N.C. R. App. P. 10(c)(4) (2011). " 'Plain error' has been defined as including error so grave as to deny a fundamental right of the defendant so that, absent the error, the jury would have reached a different result." *State v. Jones,* —— N.C. App. ——, ——, —— S.E.2d ——, ——, No. 10-475, slip op. at 3 (Dec. 21, 2010) (citation omitted), *temporary stay allowed,* —— N.C. ——, —— S.E.2d ——, 2011 N.C. LEXIS 6 (Jan. 10, 2011)

A review of the record reveals that the trial court did, initially, omit part of the instruction for an attempted crime. The trial court stated that for the jury to find Defendant guilty of attempted breaking and entering, "the State must prove two things beyond a reasonable doubt. First, that the defendant intended to commit felony breaking or entering." The trial court then recited the four elements of felonious breaking or entering, omitting the instruction for the second element of attempt, that of an overt act performed by the defendant and designed to complete the intended crime. *See* N.C.P.I. Crim. 201.10 (2009) ("And Second, that at the time the defendant had this intent, he performed an act which was calculated and designed to bring about *(name crime).* . . .").

Before completing the jury instruction, however, the trial court stated:

If you find from the evidence, beyond a reasonable doubt, that on or about the alleged date, the defendant, acting either by himself or acting together with other persons, intended to commit felony breaking and/or entering *and performed an act or acts which were designed to bring this about but which fell short of the completed offense,* and which, in the ordinary and likely course of things, would have resulted in the breaking and entering had he not been stopped or prevented from completing this apparent course of action, it would be your duty to return a verdict of guilty or attempted felony breaking and entering. If you do not so find or have a reasonable doubt *as to one or both of these things,* it would be your duty to return a verdict of not guilty.

(Emphasis added.) These instructions were repeated for the second count of felonious breaking and entering.

Despite the initial omission in the instruction, the trial court instructed the jury on the necessity of finding both intent to commit the crime and performance of an overt act designed to bring about its commission. Thus, reviewing the jury instructions as a whole, we conclude that Defendant has failed to meet his burden of proving not only that there was an error in the instruction, but also that the error was likely to have mislead the jury. Defendant's argument is without merit.

### G. Jury Instruction on Conspiracy to Commit Robbery with a Dangerous Weapon

[9] In Defendant's final argument on appeal, he contends the trial court committed plain error when instructing the jury on conspiracy to commit robbery with a dangerous weapon by failing to properly state all of the elements of the crime. We agree.

When instructing the jury on the two counts of conspiring to commit robbery with a dangerous weapon, the trial court first properly provided the elements of conspiracy. The trial court then began to recite the four elements of robbery with a dangerous weapon, but abruptly stopped and summarized the elements of the crime, stating:

Again, I remind you that as to robbery with a dangerous weapon, the State must prove four things—well, strike that. Robbery with a firearm is—Well, hold just one second, folks.

For robbery with a dangerous weapon, you have to find for that offense that there was robbery with another person *while using a firearm* to commit that offense.

(Emphasis added.) The trial court repeated the instruction for the second charge of conspiracy to commit robbery with a dangerous weapon, summarizing the elements of armed robbery: "And, again, that would be taking personal property from the person or presence of another person *while using or in the possession of a firearm.*" (Emphasis added.)

During jury deliberations, the jury requested clarification on these instructions. When reinstructing the jury, the trial court twice again stated that robbery with a dangerous weapon was "the taking of personal property from or in the presence of another person *while through the use of a firearm.*" (Emphasis added.) Under North Carolina law, armed robbery requires more than mere possession of a weapon during the commission of the crime; the defendant must also use the weapon to threaten or endanger the life of the victim. *State v. Gibbons*, 303 N.C. 484, 491, 279 S.E.2d 574, 578 (1981). While we review a jury instruction "contextually and in its entirety," and the trial court properly explained this element in its instruction to the jury on the separate charges of attempted robbery with a firearm, we are not persuaded this is sufficient to correct the omission from the instruction on conspiracy to commit robbery with a dangerous weapon. *Blizzard*, 169 N.C. App. at 296-97, 610 S.E.2d at 253. That the jury broke from deliberations to request clarification on this instruction is persuasive evidence that the trial court's instruction mislead the jury in regards to the State's burden of proof. *Id.* ("[I]t must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.") Moreover, upon re-instruction, the trial court repeated its erroneous instruction. Consequently, we conclude the trial court's failure to properly instruct the jury was plain error.

## IV. Conclusion

We find no error as to the trial court's dismissal of Defendant's motion to dismiss the charges for attempted kidnapping, attempted robbery with a dangerous weapon, and attempted breaking and entering. We find no error by the trial court for its instruction to the jury on the law of flight. Additionally, we find that any error made by the trial court in its instruction to the jury on attempted felonious breaking and entering did not amount to plain error. We conclude, however, that the State's evidence was sufficient to support only one of the two charges against Defendant for conspiracy to commit robbery with a dangerous weapon; the trial court erred in denying Defendant's motion to dismiss the charge in case number 08 CRS 052092 and we

reverse the conviction. Furthermore, we conclude the trial court committed plain error in failing to properly instruct the jury on the elements of conspiracy to commit robbery with a dangerous weapon; Defendant is granted a new trial with respect to the remaining charge of conspiracy to commit robbery with a dangerous weapon in case number 08 CRS 52088. Defendant is also granted a new sentencing hearing for the two attempted breaking and entering convictions as Defendant's sentences for these convictions were to be served concurrently with the two sentences for the conspiracy to commit robbery convictions.

No error in part; reversed and remanded in part; new trial in part; and remanded for new sentencing hearing.

Judges McGEE and BEASLEY concur.