IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-270

Filed 5 December 2023

Guilford County, Nos. 21CRS073733-34, 21CRS073737, 21CRS074321

STATE OF NORTH CAROLINA

v.

JORDAN NATHANIEL MITCHELL

Appeal by Defendant from judgments entered 9 August 2022 by Judge Patrick Thomas Nadolski in Guilford County Superior Court. Heard in the Court of Appeals 1 November 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Scott A. Conklin, for the State-Appellee.*
>
> *Mary McCullers Reece for Defendant-Appellant.*

COLLINS, Judge.

Defendant, Jordan Nathaniel Mitchell, appeals from judgments entered upon guilty verdicts of breaking and entering, two counts of larceny after breaking and entering, possession of a firearm by a felon, and resisting a public officer. Defendant argues that the trial court erred by denying his request for a jury instruction on voluntary intoxication, and that the trial court plainly erred by not identifying the specific firearm in its jury instructions for possession of a firearm by a felon. We find no error or plain error.

## I.    Background

The evidence at trial tended to show the following: Greensboro Police Officer Taylor Brame received a call around 5:00 a.m. on 10 May 2021, reporting two males wearing black hoodies and blue jeans had broken into a Walgreens pharmacy through a roll-up door behind the pharmacy.  When Brame arrived on the scene, she observed a white Jeep Cherokee parked near the roll-up door behind the pharmacy.  The vehicle was unlocked, and the keys were in the ignition.  Brame removed the keys from the ignition and "proceeded to do a perimeter around the store [and] check for broken windows, while [she] waited for additional units to respond."

Two males, later identified as Defendant and Lloyd Harper, briefly stepped out of the rear door on the right side of the pharmacy.  Brame "barely could give commands [before] they shut the door again[.]"  Defendant and Harper then exited the pharmacy through the front door and ran through the parking lot.  While Defendant and Harper were running through the parking lot, Defendant dropped what "looked to be a gun[.]"  Defendant and Harper crossed through the bushes at the front of the parking lot and ran into a field across the street.  Defendant was apprehended, while trying to climb over a fence, and Harper was later apprehended after climbing over the fence and running into the woods.

Upon searching the parking lot, officers discovered "a .22 Ruger caliber [revolver] in a holster . . . along with a tire iron that [Defendant and Harper had] discarded."  The "revolver was damaged, so th[e] barrel fell out of that."  Two bottles

of Oxybutynin, a prescription bladder medication, were found in the field where Defendant was apprehended. The shelves inside the pharmacy "[l]ooked like stuff had been knocked over. . . . [either] purposely knocked over or knocked over as [Defendant and Harper] came out[.]" Three boxes of Newport cigarettes, two boxes of compression socks, and another bottle of prescription medication were found on the floor near the pharmacy exit.

Officers searched the Jeep that was parked behind the pharmacy and discovered the following: two HP laptop computers, an HP PC charger, a Samsung TV, Razer headphones, an HP all-in-one printer, and a Byrna PepperBall pistol. These items, along with the Ruger .22 caliber revolver, had been stolen earlier that night from Wilson & Lysiak, an architectural business approximately a half-mile away from the Walgreens. Officers also discovered a nine-millimeter Beretta on the passenger side dashboard.

Defendant was indicted for two counts of breaking and entering, breaking and entering a pharmacy, two counts of larceny after breaking and entering, possession of a firearm by a felon, and resisting a public officer. Defendant filed a notice of defense, asserting that "[D]efendant was so intoxicated that he was unable to form the requisite specific intent" for the charged offenses.

The matter came on for trial on 11 July 2022. Defendant moved to dismiss at

the close of the State's evidence, and the trial court denied the motion.[1] The trial court denied Defendant's request for a jury instruction on voluntary intoxication during the jury charge conference. The jury returned guilty verdicts of breaking and entering, breaking and entering with intent to commit larceny, two counts of larceny after breaking and entering, possession of a firearm by a felon, and resisting a public officer.

The trial court sentenced Defendant to 19 to 32 months of imprisonment for possession of a firearm by a felon. Furthermore, the trial court sentenced Defendant to three consecutive terms of 11 to 23 months of imprisonment for breaking and entering, two counts of larceny after breaking and entering, and resisting a public officer. Finally, the trial court arrested judgment on Defendant's conviction for breaking and entering with intent to commit larceny. Defendant appealed.

## II.    Discussion

### A. Voluntary Intoxication

Defendant first argues that the trial court erred by denying his request for a jury instruction on voluntary intoxication.

"To determine whether a defendant is entitled to a requested instruction on voluntary intoxication, this Court reviews de novo whether each element of the

---

[1] Defendant was also indicted for breaking and entering a private residence. The indictment does not appear in the record before us; however, it appears from the record and transcripts that the trial court dismissed this charge at the close of the State's evidence and denied the motion to dismiss with respect to the relevant charges.

defense is supported by substantial evidence when taken in the light most favorable to the defendant." *State v. Meader*, 377 N.C. 157, 162, 856 S.E.2d 533, 537 (2021) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks and citation omitted).

"The doctrine of voluntary intoxication should be applied with great caution." *Id.* (quotation marks, brackets, and citation omitted). "A defendant is not entitled to an instruction on voluntary intoxication in every case in which a defendant consumes intoxicating beverages or controlled substances." *Id.* (quotation marks, brackets, ellipses, and citation omitted). To obtain a voluntary intoxication instruction, a defendant "must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form" the specific intent to commit the underlying offenses. *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). "Evidence of mere intoxication, however, is not enough to meet defendant's burden of production." *Id.* "There must be some evidence tending to show that the defendant's mental processes were so overcome by the excessive use of liquor or other intoxicants that he had temporarily, at least, lost the capacity to think and plan." *Meader*, 377 N.C. at 162, 856 S.E.2d at 537 (quotation marks, brackets, and citation omitted).

Here, surveillance footage from the Walgreens showed that Defendant and Harper "pried [the exterior roll-up door] up enough to where they . . . were actually

able to slide under the door and into the stock room." Defendant and Harper "went upstairs to see what was in the upstairs stock room" and then came back downstairs, "jimmied the door, [and] got into the pharmacy." When Brame arrived at the Walgreens, she observed the white Jeep parked near the roll-up door behind the pharmacy. At that time, Defendant and Lloyd Harper briefly stepped out of the rear door on the right side of the pharmacy, and Brame "barely could give commands [before] they shut the door again[.]" Defendant and Harper then exited the pharmacy through the front door, ran through the parking lot into a field across the street, and attempted to climb over a fence. Brame testified that Defendant was "very sweaty" and "breathing heavily," and that "we all were, as you could hear in the [bodycam footage]."

Greensboro Police Detective Martin attempted to interview Defendant after he was apprehended and observed that Defendant "was pretty sleepy . . . [and] hadn't slept in a couple days." Defendant "would talk to himself, kind of not complete any thoughts or sentences. He had a hard time standing up, which I think would relate to him being sleepy at that time, and he said that he was tired."

Defendant testified that he had used "probably like 3.5 grams" of cocaine over the span of two or three days and that he "kind of lost control of [him]self at the time somewhat." He recalled meeting up with Harper, driving around in the white Jeep, and going to the Walgreens because he was "probably [looking for] money[.]"

Defendant felt "[p]anicked" as he was leaving the Walgreens and running

through the parking lot, and remembered "[t]he road, a fence, and being tackled[.]" Defendant recalled being interviewed at the police station, and that he "didn't really have much to say." Defendant further testified, "I was nodding off. I was really tired, and they was just dragging me through the processing. I just wanted to go to sleep, talk about it -- wake up later. Didn't really -- but they drug me through that process. I was really exhausted."

When viewed in the light most favorable to Defendant, he has failed to produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form the specific intent to commit the underlying offenses. *See Mash*, 323 N.C. at 346, 372 S.E.2d at 536.

Accordingly, the trial court did not err by denying Defendant's request for a jury instruction on voluntary intoxication.

**B. Possession of a Firearm by a Felon**

Defendant next argues that the trial court plainly erred by not identifying the specific firearm listed in the indictment in its jury instructions for possession of a firearm by a felon.

"If at trial, a defendant fails to object to a jury instruction, that instruction is reviewable on a plain error standard on appeal." *State v. Raynor*, 128 N.C. App. 244, 247, 495 S.E.2d 176, 178 (1998) (citation omitted). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show

that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citation omitted). "Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]" *Id.* (quotation marks, brackets, and citations omitted).

Here, the indictment alleged that Defendant "unlawfully, willfully and feloniously did possess a Ruger 22 caliber revolver, which is a firearm." The trial court gave the following jury instruction for possession of a firearm by a felon:

> The defendant has been charged with possession -- possessing a firearm after having been convicted of a felony. For you to find the defendant guilty of this offense, the State must prove two things beyond a reasonable doubt:
>
> First, that on March 31st, 2010, in Moore County Superior Court, the defendant pled guilty to or was found guilty of a felony that was committed in violation of the laws of the State of North Carolina.
>
> And second, that after March 31st, 2010, the defendant possessed a firearm. A person has actual possession of a firearm -- strike that . A person has actual possession of an article if the person has it on the person, is aware of its presence, and either alone or together with others has both the power and intent to control its disposition or use.
>
> If you find from the evidence beyond a reasonable doubt that on March 31st, 2010, in Moore County Superior Court, the defendant pled guilty to or was found guilty of a felony that was committed in violation of the laws of the State of

North Carolina and that the defendant, after March 31st, 2010, possessed a firearm, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

Aside from briefly stepping out of the rear door on the right side of the pharmacy, Defendant was not near the Jeep where the Byrna PepperBall pistol and nine-millimeter Beretta were later found. Rather, Defendant exited the pharmacy through the front door and dropped what "looked to be a gun" while running through the parking lot. After Defendant was apprehended, "a .22 Ruger caliber [revolver] in a holster" was found in the parking lot. The trial court instructed the jury that "[a] person has actual possession of an article if the person has it on the person, is aware of its presence, and either alone or together with others has both the power and intent to control its disposition or use." Because Defendant was not near the Jeep where the Byrna PepperBall pistol and nine-millimeter Beretta were found and thus could not have had actual possession of either weapon, the trial court did not plainly err by not specifically identifying the .22 Ruger caliber revolver in its jury instructions for possession of a firearm by a felon.

## III.   Conclusion

The trial court did not err by denying Defendant's request for a jury instruction on voluntary intoxication. Furthermore, the trial court did not plainly err by not identifying the specific firearm in its jury instructions for possession of a firearm by a felon.

NO ERROR; NO PLAIN ERROR.

Judge TYSON concurs.

Judge MURPHY concurs in the result only as to Part II-A and concurs in Part II-B.